IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT HANFORD DALTON,

        Plaintiff,

v.                                                 CIV 06-0520 KBM/WPL

THE CITY OF LAS VEGAS, et al.,

        Defendants.

# MEMORANDUM OPINION AND ORDER

      I previously set out the background of this case in detail in my Memorandum Opinion and Order entered May 3, 2007 *(Doc. 70)*. At that time, I decided that I should rule on Plaintiff's duress defense to the statute of limitations before addressing the remaining issues raised in the motions to dismiss. Because some evidence on that issue had been submitted by Defendants, I partially converted the motions to dismiss *(Docs. 20, 25 & 28)* into motions for summary judgment brought pursuant to FED. R. CIV. P. 56. The parties were given two weeks to file any other evidence they wanted me to consider on the limited issue of whether Plaintiff did in fact take any legal action against defendants prior to filing this federal complaint.

      Just six days after my Order was entered, John Aragon moved to withdraw as counsel for Plaintiff. *See Doc. 71.* Mr. Aragon indicated that he could no longer work with his client and that he had given Plaintiff ample time to find a replacement attorney. Mr. Dalton filed a motion for continuance and objections to Mr. Aragon's Motion to Withdraw. *See Docs. 72 & 73.* Thereafter on May 18, 2007, Mr. Aragon filed an Affidavit by Plaintiff along with a corrected motion to withdraw. *Docs. 77, 78.* To-date, no other documents have been filed in this action.

Having reviewed the motion to withdraw and objections, I find that the motion is well taken and will be granted. Moreover, Mr. Dalton has had more than two months to find new counsel, and the filing of the affidavit by Mr. Aragon has prevented any prejudice to Mr. Dalton. Therefore, Mr. Dalton's request for a continuance, which is in reality a motion to stay these proceedings, will be denied. Especially now that two Supreme Court rulings have at last been issued that I had correctly anticipated would support my decision here, further delay in addressing the issues is unwarranted.

## Analysis on the Statute of Limitations Issue

Applying the summary judgment standard, I conclude that Plaintiff has failed to submit sufficient evidence on his duress defense to the statutes of limitations bar. The Court must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence" that would justify sending the case to a jury. *Williams v. Rice*, 983 F.2d 177, 179 (10th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986)). Indeed, summary judgment

> is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." . . . Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). To survive summary judgment, "nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; *conclusory and self-serving affidavits are not sufficient.*" *Hall v. Bellmon*, 935 F.2d

1106, 1111 (10th Cir. 1991) (emphasis added); *see also Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995).

Defendants have produced properly authenticated copies of state court pleadings that seem to demonstrate that Mr. Dalton litigated against the Defendants during the time he swears to have been paralyzed by duress (1989 until April 2006). In his affidavit, Mr. Dalton argues that "defensive litigation was filed in my name in response to litigation initiated by defendants who incorrectly used my name instead of the actual property holder, the United States Bankruptcy Trustee." *Doc. 78* at ¶1. He further maintains that the grievances he filed against defendants in 1989 and the claims for relocation entitlements with the City of Las Vegas "do not qualify as litigation." *Id.* He dismisses any of his "tort claims notices to the City of Las Vegas" as "self defense in the nature of protecting my face and body from blows by blocking said blows by raising my arms." *Id.* "To file a lawsuit would be considered an attack by Defendants and would incite Defendants into a lethal rage." *Id.*

This testimony constitutes conclusory self-serving statements by Mr. Dalton in a last ditch attempt to explain away the pleadings submitted by Defendants and to create a sham issue of fact. Most importantly, this self-serving testimony directly contradicts statements made by Mr. Dalton in a 1996 "Petition to Deny Enforcement and for Injunctive Relief." *See Doc. 66* at Exh. 1. In that pleading, Mr. Dalton purports to appear *pro se* raising many of the issues on which he now brings claims in federal court including "flagrant violation of the Petitioner's right to due process" in taking his property and "selective enforcement" of property laws and ordinances. *Id.* at ¶¶ 21 & 28-30 respectively. Indeed, Mr. Dalton's petition filed in New Mexico's Fourth Judicial District Court recites his claim here that the City "has a long history of

3

harassment" and "have [sic] pursued a personal vendetta against him." *Id.* at ¶31.

Although the state court petition is unverified, Rule 11 of the New Mexico Rules of Civil Procedure for District Courts provides that the "signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information and belief there is good grounds to support it; and that it is not interposed for delay." Having certified that he was proceeding *pro se* in that action, his contradictory affidavit testimony here fails to raise a material factual issue of dispute sufficient to defeat partial summary judgment as to the statutes of limitation bar.

## Remaining Issues on the Motions to Dismiss

Having found that no reasonable juror could find by a preponderance of the evidence that duress kept Mr. Dalton from filing suit at an earlier date, Plaintiff must allege sufficient facts occurring within these applicable statutory periods to state viable claims:[1]

- Three years for the claims brought pursuant to §§ 1983, 1985 and 1986

- Four years on the Civil RICO claims brought pursuant to 18 U.S.C. § 1961

- Two years on the NMTCA claim brought pursuant to NMSA § 41-4-1, *et seq.*

- Four years on the Relocation Expenses Claims pursuant to 42 U.S.C. § 4654 and NMSA § 42-3-9.

I find that none of these claims survive the motions to dismiss brought by Defendants, especially in light of recent Supreme Court authority and will now set out my reasoning.

---

[1] I previously ruled that Plaintiff's alternate "continuing violations" theory of relief was without merit because he has alleged only discreet acts. *Doc. 70; see McCormick v. Farrar*, 147 Fed. Appx. 716, 722 (10th Cir. 2005).

## The New Standard on a Motion to Dismiss

In a decision from this term, the Supreme Court issued what could be a wide reaching decision in *Bell Atlantic v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007).  The Court found that the "no set of facts language" of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) "has been questioned, criticized, and explained away long enough. . . ."  *Bell Atlantic*, 127 S. Ct. at 1959.  Just last month, the Tenth Circuit analyzed the import of *Bell Atlantic*'s abrogation of the *Conley* standard:

> In *Bell Atlantic*, the Supreme Court stated that the old standard, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" is "best forgotten as an incomplete, negative gloss on an accepted pleading standard."  *Bell Atlantic Corp.*, 127 S. Ct. at 1968-69.  Although the Supreme Court was not clear on the articulation of the proper standard for a Rule 12(b)(6) dismissal, its opinion in *Bell Atlantic* and its subsequent opinion in *Erickson v. Pardus*, ___ U.S.___, ___, 127 S. Ct. 2197, 2200, ___ L.Ed.2d___, ___ (2007), suggest that *courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief.*  See *Iqbal v. Hasty*, 2007 U.S.App. LEXIS 13911 (2d Cir.2007) (considering *Bell Atlantic* and *Erickson* and concluding that a "plausibility" standard was what the Supreme Court intended).  Although we now restate our Rule 12(b)(6) standard in order to bring it into compliance with *Bell Atlantic*, we emphasize that in this case our decision would be the same regardless of whether we used the old "no set of facts" standard, *see, e.g., David*, 101 F.3d at 1352, or adopt either a plausibility standard or a requirement that the complaint include factual allegations sufficient to "raise a right to relief above the speculative level."  *Bell Atlantic Corp.*, 127 S. Ct. at 1965.

*Alvarado v. KOB-TV, L.L.C.*, ___ F.3d ___, 2007 WL 2019752 at n.2 (10th Cir. July 13, 2007) (emphasis added); *see also Ton Services, Inc. v. Qwest Corp.*, ___ F.3d ___, 2007 WL 2083744 at

*7 (10th Cir. July 23, 2007) ("the Supreme Court articulated a new 'plausibility' standard under which a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'").[2]

Of particular significance to me to the case at bar, the *Bell Atlantic* majority opinion looked to the allegations of parallel activity of the defendants that were offered to support Plaintiff's conclusion that he had been the victim of an antitrust conspiracy.

> an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a § 1 [of the Sherman Act] claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

*Bell Atlantic*, 127 S. Ct. at 1966.  This observation is especially relevant in the context of Plaintiff's claims brought pursuant to  Sections 1983, 1985 and 1986.

*The Relocation Expenses Claims*

Starting with the last claim first, every case I have located finds that there is no private right of action to recoup relocation expenses pursuant to the federal Uniform Real Property Acquisition Act.  *See, e.g. Roth v. U.S. Dept. of Transp.*, 572 F.2d 183, 184 (8th Cir. 1978) ("42 U.S.C. s 4602(a) precludes judicial review of actions taken pursuant to the substantive provisions of the Uniform Relocation Assistance Act, 42 U.S.C. § 4651.  No subject matter jurisdiction

---

[2] In its online version, Merriam-Webster dictionary defines the word "plausible" as "appearing worthy of belief."  http://www.m-w.com/dictionary/plausible

exists to entertain a private cause of action for either equitable or legal relief under the Act.") (and other authorities cited therein).  Similarly, I am unpersuaded that this Court has jurisdiction over a lawsuit for damages pursuant to the New Mexico Relocation Assistance Act. *See* NMSA § 42-3-9 (awards may be given by "[a] court having jurisdiction over a proceeding instituted by the displacing agency").

*The Claim brought Pursuant to the New Mexico Tort Claims Act*

Even if I assume that Plaintiff filed a proper and timely notice of claim, he fails to identify any waiver of immunity that would apply to his case in either his First Amended Complaint or his responses to the motions to dismiss.  Given that Plaintiff has been represented by counsel to this point, it is the responsibility of neither the opposing party nor the Court to speculate whether some waiver provision "might" apply.  Therefore, the motion to dismiss pursuant to Rule 12(b)(6) is well taken.

*The RICO  and Civil Rights Claims*

The essence of Mr. Dalton's complaint is that city officials have committed certain acts against him in an effort to harass him and thereby extort property from him to the City's benefit. He alleges that the City through its officials have selectively enforced its ordinances against him and have selectively failed to provide services and protection to him that are generally provided to the public.  When I heard arguments in February, I was aware that the Supreme Court would be issuing a decision that could provide some guidance on Defendants motions to dismiss these claims.

In *Wilkie v. Robbins,* 551 U.S. ___, 127 S. Ct. 2588, 2007 WL 1804315 (June 25, 2007), a Wyoming rancher brought suit for damages against BLM officials who allegedly subjected him to

7

> harassment and intimidation aimed at extracting an easement across private property. The questions here are whether the landowner has either a private action for damages of the sort recognized in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S. Ct. 1999, 29 L.Ed.2d 619 (1971), or a claim against the officials in their individual capacities under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968 (2000 ed. and Supp. IV). We hold that neither action is available.

*Id.* at 2593.  It should be noted that the plaintiff rancher alleged significant injuries to his private interests as a result of

> the seven-year campaign of relentless harassment and intimidation [when they] refused to maintain the road providing access to the ranch, trespassed on Robbins' property, brought unfounded criminal charges against him, canceled his special recreational use permit and grazing privileges, interfered with his business operations, and invaded the privacy of his ranch guests on cattle drives.

Nevertheless, the Court reasoned, as is analogous to the case here, that

> strictly enforcing rules against trespass or conditions on grazing permits, are legitimate tactics designed to improve the Government's negotiating position.  Just as a private landowner, when frustrated at a neighbor's stubbornness in refusing an easement, may press charges of trespass every time a cow wanders across the property line or call the authorities to report every land-use violation, the Government too may stand firm on its rights and use its power to protect public property interests.
>
> \* \* \*
>
> [Plaintiff] does make a few allegations, like the unauthorized survey and the unlawful entry into the lodge, that charge defendants with illegal action plainly going beyond hard bargaining.  If those were the only coercive acts charged, Robbins could avoid the "too much" problem by fairly describing the Government behavior alleged as illegality in attempting to obtain a property interest for nothing, but that is not a fair summary of the body of allegations before us, according to which defendants' improper exercise of the Government's "regulatory powers" is

8

> essential to the claim. . . . Rather, the bulk of [Plaintiff's] charges
> go to actions that, on their own, fall within the Government's
> enforcement power.

*Id.* at 2602-2603. Because a *Bivens* action was fashioned as a remedy for plaintiffs whose rights were violated by federal rather than state officials, I believe the same rationale would apply to Mr. Dalton's claims brought pursuant to 42 U.S.C. §§ 1983, 1985 & 1986.

Also based upon the *Wilkie* reasoning, Mr. Dalton fails to state a viable RICO claim. A fair reading of the vast number of factual allegations of the Amended Complaint indicates that the city officials acted to benefit the City of Las Vegas, not themselves as individuals. The Supreme Court was loathe to find that by enacting "the Hobbs Act (let alone RICO)[,] Congress meant to go beyond the common law preoccupation with official corruption, to embrace the expansive notion of extortion Robbins urges on us." *Id.* at 2607.

## Plaintiff's Conclusory Allegations Fall Short

In my earlier opinion, I noted that Plaintiff and his counsel had failed to identify dates (beyond reference to a decade) when describing dates that events took place and also often failed to specify the identity of the person (beyond mere reference to a city official) allegedly inflicting the harm. I also concluded that an opportunity to file yet another amended complaint was unlikely to produce more clarity as to the identities of persons who allegedly committed alleged wrongful acts. *See Doc. 70* at 4.

Now looking, as I must, to only those allegations of incidents falling within the applicable statute of limitations period, I find that the allegations against all of the defendants fail to state a viable claim. Although he is not held to a higher pleading standard, Mr. Dalton's factual

9

allegations must be sufficient to fairly identify the actor and the date of any incident.  And as noted above, since my decision, the Supreme Court has abrogated the *Conley* standard on a motion to dismiss, *i.e.* "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  The new "plausibility" standard announced in *Bell Atlantic* makes it even clearer that conclusory allegations like those set forth by Mr. Dalton are insufficient to support a vague conspiracy claim.  "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."  *Bell Atlantic*, 127 S. Ct. at 1966.

Wherefore,

IT IS HEREBY ORDERED AS FOLLOWS:

(1)  Attorney John Aragon's Motion and Corrected Motion to Withdraw as Plaintiff's counsel *(Docs. 71 & 73)* are granted;

(2)  Mr. Dalton's Motion for Continuance *(Doc. 72)* is denied;

(3)  Summary Judgment is granted in part to Defendants on all claims based upon events occurring prior to the applicable statute of limitations;

(4)  Defendants' Motions to Dismiss *(Docs. 20, 25 & 28)* are granted such that the claims against all defendants are dismissed with prejudice; and,

(5)  A final order pursuant to Rule 58 dismissing the Amended Complaint in its entirety shall be entered concurrently with this Memorandum Opinion and Order.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent